IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

**TAMMERA GORDINEER,**
**ELIZABETH JOHNSON, and**
**NICHOLE STAGGS,**

      Plaintiffs

v.

**ROCKY MOUNTAIN OFFENDER MANAGEMENT SYSTEMS**, a Colorado Limited
Liability Company and
**DAN BEECK,**

      Defendants.

---

## COMPLAINT AND JURY DEMAND

---

The Plaintiffs, Tammera Gordineer, Elizabeth Johnson and Nichole Staggs, individually and on behalf of all others similarly situated ("Plaintiffs"), by and for their Complaint against the Defendants Rocky Mountain Offender Management Systems, LLC, and Dan Beeck (collectively "Defendants"), seek to recover for Defendants' violations of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq., (*"FLSA") and hereby allege and state as follows:

### INTRODUCTION

1.    This is a collective action brought pursuant to the FLSA, 29 U.S.C. § 216(b), by Plaintiffs on behalf of themselves and all other similarly situated current and former hourly employees of Defendants, for the purpose of obtaining relief under the FLSA for unpaid wages, unpaid overtime pay, liquidated damages, costs, attorneys' fees, and/or any such other relief as

1

the Court may deem appropriate.

2.     Defendants operate offices in Colorado, California, Kansas, New York, New Mexico, and Utah.  Defendants operate 13 offices throughout the State of Colorado.  The complained of unlawful activities at issue in this Complaint affect Defendants' present and former hourly employees.

3.     Defendants knowingly deny hourly wages and overtime pay to their employees, by requiring them to perform "off the clock" work for which the employees receive no payment, including work performed during unpaid meal breaks.

4.     Defendants' willful failure to pay employees earned wages and overtime compensation violates federal law as set out in the Fair Labor Standards Act.

**PARTIES**

5.     Defendant Rocky Mountain Offender Management Systems, LLC, ("RMOMS") a Colorado limited liability company, advertises itself as "a leading provider of non-residential correctional alternatives to Municipal, County, and State Governments throughout the United States."

6.     Defendant RMOMS is an employer as provided by the FLSA.  29 U.S.C. § 203(d).  Defendant RMOMS engages in interstate commerce, has employees who engage in interstate commerce, and has more than $500,000 in annual dollar volume of business.

7.     Defendant Dan Beeck is the owner and/or chief executive officer of RMOMS, who "exercises control over the nature and structure of the employment relationship" or has "economic control over the relationship" with respect to RMOMS and its employees, and is subject to liability as an employer under the FLSA.

2

8.      Plaintiff Tammera Gordineer is a resident of the state of Colorado and a former employee of RMOMS, within the past three years.

9.      Plaintiff Elizabeth Johnson is a resident of the state of Colorado and a former employee of RMOMS, within the past three years.

10.     Plaintiff Nichole Staggs is a resident of the state of Colorado and a former employee of RMOMS, within the past three years.

11.     Each Plaintiff has concurrently filed her consent to join suit as a Party Plaintiff pursuant to 29 U.S.C. § 216(b).  See Exhibits A, B and C, attached hereto.

## JURISDICTION AND VENUE

12.     The FLSA authorizes court actions by private parties, such as the Plaintiffs, to recover damages for violation of the FLSA's wage and hour provisions.  Jurisdiction over Plaintiffs' FLSA claims is based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

13.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c), because Defendants do business in this judicial district and a substantial part of the unlawful conduct giving rise to the Plaintiffs' claims occurred in this judicial district.

## GENERAL ALLEGATIONS

14.     Defendant RMOMS contracts with governmental agencies, to provide a "comprehensive full-service correctional program" for which the supervised persons, whether on pre-trial release, probation or parole, pay the cost of supervision or monitoring.  RMOMS publicly advertises that it can "design, staff, and maintain successful jail-alternative, offender-funded supervision and monitoring systems at zero cost to the communities where the offender has committed the offense, or to the governmental entities charged with being the

3

custodian of the offender when he or she is released from custody."

15.    The individuals for whom these services are provided include: low and medium

risk criminal offender populations; Domestic Violence offender populations; High Risk

Substance Abuse offender populations; Alcohol and Drug Driving offenders; persons in either

DUI/DWI or Drug Court Programs.

16.    The purpose of RMOMS is to help such individuals become law abiding citizens,

who do not re-offend.

17.    RMOMS has service provider contracts with more than 10 Colorado Judicial

Districts, including the those located in the Denver Metropolitan area as well as other Colorado

communities, including Cortez, Durango, Fort Collins, Grand Junction, Greeley and Pagosa

Springs.

18.    RMOMS employs individuals to provide the services called for by the service

provider contracts, including but not limited to case managers, UA/BA technicians, and

individuals who provide electronic monitoring through ankle monitoring units and GPS tracking.

Upon information and belief, RMOMS employs other individuals who may be entitled to recover

wages and overtime pay beyond these categories of workers.

19.    Each of the Plaintiffs worked for Defendant RMOMS as a Case Manager.

20.    When Plaintiff Gordineer's employment terminated, she was a Case Manager One

and was entitled to receive overtime pay beyond her usual wages.

21.    When Plaintiff Johnson resigned her employment, she was a Case Manager Three

and was entitled to receive overtime pay beyond her usual wages.

22.    When Plaintiff Staggs resigned her employment, she was a Case Manager Two

and was entitled to receive overtime pay beyond her usual wages.

23.     Upon information and belief formed after reasonable investigation, the persons employed to provide case management, substance monitoring, electronic monitoring or other compensable work are non-exempt employees under the FLSA, who were entitled to receive overtime pay beyond their usual wages.

24.     Each of the Plantiffs, as well as other employees, worked substantial overtime hours on a daily and weekly basis, in order to complete the work required of them by RMOMS.

25.     Additionally, RMOMS required the Plaintiffs and other similarly situated employees to work specified weekends and evenings, without the payment of wages or overtime pay and for which the Plaintiffs and those similarly situated employees were to take "comp time" or vacation time, which leave time was not made available to the employees.

26.     Additionally, RMOMS automatically deducted time for a meal break from the wages of Plaintiffs and all similarly situated employees, regardless of whether Plaintiffs and other similarly situated employees were released performing work-related duties during the meal break.

27.     Such behavior demonstrates RMOMS' custom, policy and practice of not paying all wages and overtime pay to non-exempt employees.  Defendant Beeck is responsible for setting the custom, policy and practice of not paying all wages and overtime pay to non-exempt employees.

28.     RMOMS' managers told Plaintiffs and similarly situated employees that they would be compensated only for 8 hours of work per day, regardless of the amount of time the Plaintiffs and other similarly situated employees actually worked.

29.     In approximately the last half of 2011, RMOMS required Plaintiffs and those similarly situated employees to "clock in" and "clock out" at specified times, even though the employees worked both before and after the hours shown on the time clock.

30.     The actual time worked by the Plaintiffs and some of the similarly situated employees can be found in two electronic systems: the itrax system (the RMOMS internal system) and ICON (the State Judicial system).  Certain employees had to be "logged in" to each system in order for them to properly perform their work.

31.     RMOMS managers knew that Plaintiffs and those similarly situated employees were working overtime, but told the employees they "were not supposed to" do so.

32.     Nonetheless, RMOMS expected or knowingly accepted overtime work by the Plaintiffs and other similarly situated employees.

33.     RMOMS knew that it had an obligation to pay overtime to its non-exempt employees and knowingly chose not to pay such overtime when it knew non-exempt employees were in fact working overtime.

## COLLECTIVE ACTION ALLEGATIONS

34.     Plaintiffs bring Count I, the FLSA claim, as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b).  In addition to the claims of the individually named Plaintiffs, Plaintiffs bring this action on behalf of all similarly situated former and current employees of RMOMS. The potential class of opt-in employees can be defined as:

> All current and former hourly employees of Defendant RMOMS, who worked for the Company since May 7, 2009, and who were not paid for all time spent performing compensable work-related tasks or legally compensable time, including unpaid meal breaks.

35.     The FLSA claims may be pursued by those who opt-in to this case, as provided in 29 U.S.C. § 216(b).

36.     Plaintiffs, individually and on behalf of other similarly situated employees, seek relief on a collective basis to challenge Defendants' custom, policy and practice of failing to accurately record all hours worked and failing to pay employees for all hours worked, including hourly wages and overtime pay, among other FLSA violations.

37.     The number and identity of other similarly situated employees yet to opt-in and consent to be a party herein may be determined from the records of Defendants, and potential collective members may be easily and quickly notified of the pendency of this action, in order to exercise their opt-in rights.

38.     On information and belief formed after reasonable investigation, Defendants have employed or currently employ approximately 100 hourly wage employees who potentially have FLSA claims similar to the claims set forth herein, though some may not currently be resident in the State of Colorado.

39.     Potential collective action members may be informed of the pendency of this class action through direct mail.

40.     There are questions of fact and law common to the class that predominate over any questions affecting only individual members.  These include, without limitation, the following:

   a)     Whether Plaintiffs were compensated for all hours spent performing
          compensable work-related tasks;

   b)     Whether Defendants failed to pay employees for unpaid breaks that were
          effectively compensable because Plaintiffs spent time performing work-

related tasks during their unpaid meal break;

c)     Whether Defendants' compensation policy and practice accurately accounts for the time Plaintiffs spent performing work-related tasks;

d)     Whether Defendants' compensation policy and practice is illegal;

e)     Whether Defendants had a policy and practice of willfully failing to record and compensate employees for all time worked; and

f)     Whether Defendants failed to accurately record all compensable time, resulting in a failure to compensate Plaintiffs and other similarly situated employees for regular hourly wages and overtime pay, in violation of the mandates of the FLSA.

41.    A collective action is superior means to resolve the claims herein, with respect to considerations of consistency, economy, efficiency, fairness and equity, compared to other available means for the fair and efficient adjudication of the federal law claims.

42.    The Collective Action Representatives' claims are typical of those of the similarly situated employees, in that these employees have been employed in the same or similar positions as the Collective Action Representatives and were subject to the same or similar unlawful practices as the Collective Action Representatives.

43.    A collective action is the appropriate method for the fair and efficient adjudication of this controversy.  Defendants have acted or refused to act on grounds generally applicable to the similarly situated current and former hourly employees.  The presentation of separate actions by individual similarly situated current or former hourly employees could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants, and/or substantially impair or impede the ability of collective action members to protect their interests.

44.     The Collective Action Representatives will adequately represent the similarly situated current and former hourly employees because they worked under the same conditions during their employment and their interests do not conflict with the interests of the similarly situated current and former hourly employees they seek to represent.  The interests of the similarly situated employees will be fully and adequately protected by the Collective Action Representatives and their undersigned counsel, who have extensive experience prosecuting complex collective action lawsuits.

45.     Maintenance of this action as a collective action is a fair and efficient method for the adjudication of this controversy.  It would be impracticable and undesirable for each member of the collective action to bring a separate action.  In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single collective action can determine the rights of all collective action members, using all judicial resources efficiently and economically.

## COUNT I
### Violation of the Fair Labor Standards Act of 1939

46.     Plaintiffs incorporate all statements above and below as if fully restated herein.

47.     The FLSA regulates, among other things, the payment of wages and overtime pay by employers whose employees are engaged in commerce or employed in an enterprise engaged in commerce.  29 U.S.C. § 201(a)(1).

48.     RMOMS was and is subject to the wage and overtime pay requirements of the FLSA because it is an enterprise engaged in commerce and its employees are engaged in commerce.

49.     Defendant Beeck is the owner and/or chief executive officer of RMOMS, who "exercises control over the nature and structure of the employment relationship" or has "economic control over the relationship"with respect to RMOMS and its employees, and is subject to liability for wage and overtime pay liability as an employer under the FLSA.

50.     At all times material hereto, Plaintiffs have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. § 201 *et seq.*

51.     Section 13 of the FLSA, 29 U.S.C. § 213, exempts certain categories of categories of employees from hourly wage and overtime pay obligations.  None of the FLSA exemptions apply to the Plaintiffs.  Accordingly, Plaintiffs must be paid hourly wages and overtime pay in accordance with the FLSA.

52.     The individually named Plaintiffs and all similarly situated current and former hourly employees are victims of a uniform and company wide compensation policy and practice, in violation of the FLSA.

53.     Defendants violated the FLSA by failing to account for all compensable time worked by Plaintiffs and other similarly situated current and former hourly employees, which resulted in a failure to pay Plaintiffs and other similarly situated current and former hourly employees for all compensable hourly wages and overtime pay.

54.     Additionally, Defendants violated the FLSA by automatically deducting time for a meal break from the wages of Plaintiffs and all similarly situated current and former hourly employees, regardless of whether Plaintiffs and other similarly situated employees were released performing work-related duties during the meal break.

55.     In perpetuating these unlawful practices, Defendants have willfully failed to keep

accurate records for all of the time worked by Plaintiffs and other similarly situated employees.

56.     Defendants did not act in good faith or with reasonable grounds to believe that the failure to accurately record compensable work time was not a violation of the FLSA and, as a result thereof, Plaintiffs and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid hourly wages and overtime pay described above, pursuant to the FLSA.  29 U.S.C. § 216(b).  Alternatively, should the Court find that Defendants did not act willfully in failing to pay all hourly wages and overtime pay, Plaintiffs and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

57.     Plaintiffs and all similarly situated employees are entitled to damages equal to the mandated overtime pay within the three years preceding the filing of this Complain, plus periods of equitable tolling, because Defendants acted willfully and knew or showed reckless disregard of whether its conduct was prohibited by the FLSA.

58.     Pursuant to the FLSA, 29 U.S.C. § 216(b), successful plaintiffs are entitled to reimbursement of the costs and attorney's fees expended in successfully prosecuting an action for unpaid wages and overtime pay.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs respectfully request the following relief:

1.     At the earliest practicable time, issue an Order allowing Notice or issue Court Supervised Notice to all similarly situated current and former employees of Defendants, working at any time in the past three years, of this action, the nature of this action, their rights to "opt-in" to this action if they worked "off the clock" for times not paid, including time that may be paid at

overtime rates;

      2.     Issue an Order directing and requiring Defendants to pay Plaintiffs and all similarly situated employees damages in the form of reimbursement for unpaid hourly wages and overtime pay for all time spent performing compensable work for which they were not paid, in the amount and at the rates required by the FLSA;

      3.     Issue an Order directing and requiring Defendants to pay Plaintiffs and all similarly situated employees liquidated damages in an amount equal to, and in addition to the amount of wages and overtime pay owed to them;

      4.     In the alternative, issue an Order directing and requiring Defendants to pay Plaintiffs and all similarly situated employees prejudgment interest on the amount of wages and overtime pay owed to them;

      5.     Issue an Order directing Defendant to reimburse Plaintiffs and all similarly situated employees for costs and attorneys fees expended in the course of litigating this action;

      6.     Issue an Order directing Defendant to reimburse Plaintiffs and all similarly situated employees for post-judgment interest; and

      7.     Order such other and further relief as the Court deems just and appropriate.

## JURY DEMAND

The Plaintiffs demand a trial by jury on so issues so triable.

Dated this 9th day of May, 2012.

                                    BURG SIMPSON
                                    ELDREDGE HERSH & JARDINE, P.C.

                                    *s/ Diane Vaksdal Smith*
                                    Diane Vaksdal Smith
                                    40 Inverness Drive East
                                    Englewood, CO 80112
                                    PH: (303) 792-5595
                                    Email: dsmith@burgsimpson.com
                                    *Attorneys for Plaintiffs*

Plaintiffs' Addresses:

Elizabeth Johnson
10916 West Bowles Place
Littleton, CO 80127

Tammera Gordineer
14400 E. Fremont Ave., #5306
Englewood, CO 80112

Nichole Staggs
130 E. Highline Circle, #304
Centennial, CO 80122

13